**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOSEPH EVANS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 1:17-cv-01731 (KBJ) |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

<u>**MEMORANDUM OPINION**</u>

On January 28, 2010, pro se petitioner Joseph Evans was convicted in D.C. Superior Court of five state law robbery and firearms offenses.  Evans is currently incarcerated at the United States Penitentiary in Lee County, Virginia, where he is serving a 360-month sentence for these crimes.  Before this Court at present is a Petition for a Writ of Habeas Corpus that Evans has filed pursuant to 28 U.S.C. § 2254, and the government's opposition thereto.  (*See* Pet., ECF No. 1; U.S.'s Opp'n to Pet'r's Pet. for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Opp'n"), ECF No. 42.) Evans maintains, *inter alia*, that his appellate counsel in the underlying Superior Court case was ineffective for failing to argue that the trial judge had violated the Sixth Amendment when the judge did not grant Evans additional time to retain trial counsel of his choosing and instead forced him to proceed to trial with a court-appointed lawyer.  (*See* Pet. at 19–21, 25.)[1]  In its opposition brief, the United States argues both that Evans's petition must be dismissed because it was filed outside of the one-year

---

[1] Page number citations to the documents that the parties have filed refer to those automatically assigned by the Court's electronic case filing system.

limitations period contained in 28 U.S.C. § 2244(d)(1) (*see id.* at 1), and that Evans's petition fails on the merits because the Court must defer to the decision of the D.C. Court of Appeals, which previously rejected Evans's contention that his appellate counsel was ineffective for failing to raise the Sixth Amendment issue (*see id.*).

On June 1, 2020, this Court entered an Order **DENYING** Evans's habeas petition.  (ECF No. 53.)  This Memorandum Opinion explains the reasons for that Order.  In short, the Court found that it has jurisdiction to hear Evans's claim of ineffective assistance of appellate counsel ("IAAC") and that Evans's petition for a writ of habeas corpus presenting this claim is timely, but that Evans did not exhaust his state-law remedies due to a factual error in the IAAC claim that he presented to the D.C. Court of Appeals.  However, the Court reached the merits of his petition nevertheless, and concluded that Evans is not entitled to an extraordinary writ because the trial court did not violate his right to retain counsel of his choice and his appellate counsel adopted a reasonable strategy in not raising this issue on appeal.

I.      **BACKGROUND**

A.      **Factual Background[2]**

Evans's underlying criminal case (referred to herein as "the robbery matter") was initiated in the District of Columbia Superior Court on March 8, 2008.  *See United States vs. Evans*, No. 2008 CF3 5414 (D.C. Super. Ct. Mar. 8, 2008), Entry No. 1.  A grand jury handed down the indictment on September 17, 2008, charging Evans with first degree burglary while armed (one count), armed robbery (one count), possession of

---

[2]  The underlying facts, which are not in dispute, are drawn from the parties' memoranda and the attached exhibits, as well as the public dockets of the courts of the District of Columbia.

a firearm during a crime of violence or dangerous offense (two counts), and unlawful possession of ammunition (one count). *See Evans*, No. 2008 CF3 5414, Entry Nos. 65–70.

Court-appointed defense counsel, Eugene Ohm of the Public Defender Service for the District of Columbia ("PDS"), initially represented Evans with respect to these charges. *See Evans*, No. 2008 CF3 5414, Entry No. 16.  However, at a status hearing held on September 18, 2009—over one and a half years into the representation—Ohm informed the Superior Court judge that Evans and his family had contacted a private criminal defense attorney, Thomas Key, about assuming representation of Evans in the robbery matter.  (*See* Opp'n at 9.)  Evans and Key were familiar with one another because Key had been representing Evans in an unrelated homicide matter since May 7, 2009.  (*See* Opp'n at 8.)  *See also United States v. Evans*, No. 2008 CF1 008163 (D.C. Super. Ct. Apr. 11, 2008), Entry No. 44.  Although Key's retention was not final because Evans's family required additional time to obtain the necessary funds, Ohm asked to withdraw his appearance based on a conflict of interest.  *See Evans*, No. 2008 CF3 5414, Entry Nos. 16, 108–10.  At the time of this request, Evans's trial with respect to this robbery matter had been scheduled and postponed at least four times, often at the request of the defense.  (*See* Opp'n at 9 & n.6 (citations omitted).)  *See also Evans*, No. 2008 CF3 5414, Entry Nos. 88, 105, 115.

The Superior Court judge granted Ohm leave to withdraw his appearance, and appointed PDS attorney Kevin D. Irving to represent Evans, in order to ensure that Evans would not be without counsel while his family pursued retaining Key.  (*See* Opp'n at 9; Pet'r's Resp. to Opp'n ("2d Reply"), ECF No. 49, at 9.)  *See also Evans*,

No. 2008 CF3 5414, Entry Nos. 108–110.  The court set a further status hearing for October 30, 2009, and instructed Evans to retain Key before that date if he wanted Key to represent him at the trial that was scheduled for December 8, 2009.  (*See* Opp'n at 9; 2d Reply at 9.)  The court also warned Evans that if Key was not retained by that date, Irving would represent him at trial.  (*See* Opp'n at 9; 2d Reply at 9.)

When the time came for the status hearing on October 30, 2009, Evans had not yet retained Key; therefore, Irving was still representing Evans.  (*See* Opp'n at 9.)  *See also Evans*, No. 2008 CF3 5414, Entry Nos. 111–16.  During the hearing, Irving requested a continuance of the trial date because he had not received all of the necessary discovery from Ohm, and because there was also a possibility that Evans might still retain Key.  (*See* Pet. at 24; Opp'n at 9.)  The trial court granted a brief continuance to allow Irving to obtain and review the discovery, and rescheduled the start of trial for January 25, 2010.  (*See* Opp'n at 9; Pet. at 23.)  *See also Evans*, No. 2008 CF3 5414, Entry Nos. 113–16.  However, the trial court also clarified that it was not postponing the trial date to allow Evans further opportunity to retain Key.  (*See* Opp'n at 9–10.)  In this regard, the judge unequivocally stated: "I won't continue it again and I'm not going to allow Mr. Key to come in[,] so you might as well stop trying to get that.  Mr. Irving is a very, very good lawyer, and you know, that's only going to delay it further."  (*Id.* (quotation marks and citation omitted).)  Meanwhile, from January 10 through January 20, 2010, Evans proceeded to a trial by jury in the homicide matter with Key representing him, and he was ultimately acquitted.  *See Evans*, No. 2008 CF1 008163, Entry Nos. 64–100.

The Superior Court held a plea hearing in the robbery matter on January 22, 2010, at which time Evans rejected the government's plea offer and opted to proceed to trial. During this hearing, there was no discussion of Evans possibly retaining Key for the trial. (*See* Opp'n at 9–10 (citations omitted).) Evans's jury trial in the robbery matter commenced on January 25, 2010, as scheduled, and he was convicted on all counts on January 28, 2010. (*See* Opp'n at 10; 2d Reply at 1.) *See also Evans*, No. 2008 CF3 5414, Entry Nos. 122–50. Evans was eventually sentenced to a total of 360 months in prison. (*See* Order, ECF No. 25, at 1–2.) *See Evans*, No. 2008 CF3 5414, Entry Nos. 176–85.

Evans filed a direct appeal of his convictions on January 7, 2011, and on March 20, 2014, the D.C. Court of Appeals affirmed the judgment. (*See* 2d Reply at 1; Opp'n at 2 (citations omitted).) Evans then filed a timely petition for certiorari with the United States Supreme Court. *See Evans v. United States*, 135 S. Ct. 145 (2014), No. 13–10610 (filed June 16, 2014). Then, on September 18, 2014, while his Supreme Court petition was pending, Evans filed a motion asking the D.C. Court of Appeals to recall its mandate. (*See* Mot. to Recall Mandate ("Recall Mot."), Ex. 2 to Opp'n, ECF No. 42-2.) Among other things, Evans's motion to recall the mandate contended that the trial court erred in refusing to allow him to retain his defense counsel of choice. (*See id.* at 2–4.) More specifically, Evans argued that, *at the plea hearing held on January 22, 2010*, the trial court improperly denied his request for an additional continuance to retain Key. (*See id.* at 7.)[3] In his recall motion, Evans also set forth an

---

[3] Evans later admitted to being mistaken about the relevant dates, as the exchanges regarding Key representing Evans took place in September and October, as noted above.

IAAC claim, maintaining that his appellate defense counsel, Jenifer Wicks, had been ineffective for failing to raise the choice-of-counsel issue on direct appeal.  (*See id.* at 4.)

Evans's recall motion was still pending when, on October 6, 2014, the Supreme Court denied Evans's cert petition.  *See Evans*, 135 S. Ct. 145.  Thereafter, on June 17, 2015, the D.C. Court of Appeals denied Evans's motion to recall the mandate and did so "on the merits" as to all claims.  (*United States v. Evans*, No. 11-CF-15 (D.C. Ct. App. June 18, 2015) ("Recall Decision"), Ex. 3 to Opp'n, ECF No. 43-3, at 2.)  With respect to Evans's choice-of-counsel claim, the D.C. Court of Appeals held that "[a]ppellant's contention that the trial court failed to afford him counsel of choice [was] unsupported by the record of the plea hearing that occurred on January 22, 2010."  (*Id.* at 2–3.)

On October 16, 2015, Evans filed a motion with the Superior Court, invoking D.C. Code § 23-110 and seeking to vacate his convictions.  (*See* Ex. 4 to Opp'n, ECF No. 42-4, at 6.)  Evans raised the same choice-of-counsel claims in this section 23-110 motion as he had included in his prior motion to recall the mandate; that is, he argued that the trial court erred in denying him his choice of counsel, and that Wicks was ineffective for not raising this issue on appeal.  (*See id.* at 5.)[4]  The Superior Court denied Evans's section 23-110 motion on June 10, 2016, and Evans appealed this decision to the D.C. Court of Appeals on June 24, 2016.  *See Evans*, No. 2008 CF3 5414, Entry Nos. 199–200.

---

[4]  However, Evans corrected the date error that was in his motion to recall the mandate, by clarifying the hearing dates at which the trial court addressed his efforts to retain Key.  (*See* Ex. 4 to Opp'n at 4.)

B.      **Procedural Background**

On August 12, 2016, while the section 23-110 appeal was still pending in the

D.C. Court of Appeals, Evans filed the instant habeas petition in the United States

District Court for the Western District of Virginia ("WD-VA"), initially seeking to

proceed under 28 U.S.C. § 2241.  (*See* Pet.)  Evans also filed additional evidence to

supplement his habeas petition on August 22, 2016.  (*See* Suppl. to the 2241 to Vacate,

Set Aside, and Correct Sentence, ("Add. Ev."), ECF No. 2.)[5]

Although Evans's habeas petition was initially far reaching in terms of its

arguments, on July 5, 2017, WD-VA granted the United States' preliminary motion to

dismiss and limited Evans's habeas claims.  (*See* Order, ECF No. 25, at 8; Pet. at 25–

29.)  What remained was a single issue:  whether Wicks was ineffective in failing to

argue on direct appeal that Evans was deprived of the right to trial counsel of choice.

(*See* Order at 8.)  Thereafter, in an order entered on August 24, 2017, WD-VA

construed Evans's habeas petition as one arising under 28 U.S.C. § 2254 and transferred

the matter to this Court.  (*See* Order, ECF No. 30.)

Evans filed a supplement to his habeas petition on September 27, 2017 (Pet'r's

Mot. to Suppl. the Record, ECF No. 32), which he later withdrew and supplanted with a

new petition supplement (Pet'r's Mot. to Amend or Suppl. Pet'r's 2254 Writ of Habeas

Corpus ("Pet. Suppl."), ECF No. 39.)  On June 6, 2018, the United States filed its

opposition to Evans's Petition, in which it argues, as an initial matter, that Evans's

habeas petition is time-barred.  (*See* Opp'n at 13–16.)  The United States also argues

---

[5]  After filing this habeas petition, Evans voluntarily dismissed the aforementioned appeal of the
Superior Court's denial of his section 23-110 motion.  *See Evans*, No. 2008 CF3 5414, Entry No. 204.

that Evans's petition fails on the merits because the D.C. Court of Appeals has already decided this precise issue against Evans, and this Court is obliged to defer to that decision.  (*See id.* at 16–23.)  Evans filed a timely reply on June 26, 2018, in which he argues that the petition is timely (*see* Pet'r's Traverse ("Reply"), ECF No. 44, at 1–2), and further asserts that, while he failed to present this issue to the Court of Appeals properly in his motion to recall the mandate, the United States in its opposition has "essentially admitted" that the trial court denied Evans his choice of counsel, and thus the habeas petition should be granted (*id.* at 2–3).

Evans filed a first amendment to his reply brief on June 25, 2018, to assert that he had failed to exhaust his IAAC claim by properly submitting it to the D.C. Court of Appeals, but that this failure should be excused under a "cause and prejudice" test. (*See* Pet'r's Amendment to Traverse ("First Reply Suppl."), ECF No. 45, at 2.)  Evans then filed a second amendment on July 30, 2018 (*see* Pet'r's Amendment, ECF No. 46), and a third amendment on October 22, 2018 (*see* Pet'r's Amendment, ECF No. 47).  He also filed a second full reply on October 24, 2018.  (*See* 2d Reply.)  The various amendments and the second reply were all filed beyond the deadline imposed by this Court; however, the Court has considered all of these filings and the arguments therein because Evans is proceeding here pro se.  Evans's habeas petition is now ripe for this Court's consideration.

## II.   FEDERAL HABEAS PETITIONS FILED BY PERSONS CONVICTED IN THE SUPERIOR COURT

Section 2254 of Title 28 of the U.S. Code vests federal district courts with jurisdiction to issue writs of habeas corpus with respect to a person in custody pursuant to a judgment of a state court "on the ground that he is in custody in violation of the

Constitution or laws or treaties of the United States[,]" 28 U.S.C. § 2254(a), including individuals convicted in and sentenced by the Superior Court of the District of Columbia.  *See* 28 U.S.C. § 2254(a); *see also Smith v. United States*, No. 00–5181, 2000 WL 1279276, at *1 (D.C. Cir. Aug. 23, 2000) (per curiam) (explaining that "conviction in the Superior Court of the District of Columbia is considered a state court conviction under federal habeas law," and a challenge to a Superior Court conviction is "properly brought under 28 U.S.C. § 2254") (citations omitted).  However, unlike prisoners convicted in state courts, "a District of Columbia prisoner has no recourse to a federal judicial forum unless [he shows that] the local remedy is inadequate or ineffective to test the legality of his detention."  *Garris*, 794 F.2d at 726; *see Byrd v. Henderson*, 119 F.3d 34, 37 (D.C. Cir. 1997) ("In order to collaterally attack his sentence in an Article III court a District of Columbia prisoner faces a [jurisdictional] hurdle that a federal prisoner does not.").  As relevant here, the D.C. Circuit has long held that the local collateral relief provision—D.C. Code section 23-110—"is, by definition, inadequate to test the legality of [a prisoner's] detention" if he contends that he is being held in violation of his Sixth Amendment right to effective assistance of counsel because "the Superior Court lacks authority to entertain a section 23-110 motion challenging the effectiveness of appellate counsel." *Williams v. Martinez*, 586 F.3d 995, 998 (D.C. Cir. 2009).

In addition to establishing that a federal district court has jurisdiction over the habeas petition, a person convicted in Superior Court has to demonstrate that his habeas petition has been filed in a timely fashion.  "Effective April 24, 1996, the Antiterrorism and Effective Death Penalty Act (AEDPA) . . .  impose[d] a 1–year period of limitation

on motions brought under [28 U.S.C. § 2255]" by individuals serving sentences on federal charges, *United States v. Saro*, 252 F.3d 449, 451 (D.C. Cir. 2001) (citation omitted), and courts have applied this same one-year limitations period to habeas petitions brought under 28 U.S.C. § 2254 by individuals serving sentences on state charges, *United States v. Cicero*, 214 F.3d 199, 203 n.8 (D.C. Cir. 2000) (citations omitted).

The one-year limitations period for filing a petition under 28 U.S.C. § 2254 typically runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A); *see also Wright v. Wilson*, 930 F. Supp. 2d 7, 9 (D.D.C. 2013) (noting that the limitations period set forth in 28 U.S.C. § 2244 applies to petitions brought under 29 U.S.C. § 2254).[6] And direct review of a criminal case concludes when the Supreme Court "affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." *Clay v. United States*, 537 U.S. 522, 527 (2003); *see also* S. Ct. R. 13(1) (setting a 90-day deadline for filing a petition for writ of certiorari). In addition, the statute that governs federal habeas petitions clarifies that the one-year limitations period is automatically tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending[,]" 28 U.S.C. § 2244(d)(2), and remains tolled until such time as "the application has achieved final

---

[6] Section 2244(d) also lays out three alternative dates not applicable here, such as when the claim arises from a newly recognized constitutional right or newly discovered evidence. *See* 28 U.S.C. § 2244(d)(1)(B)–(D).

resolution through the State's post-conviction procedures," *Carey v. Saffold*, 536 U.S. 214, 220 (2002), including any appeals in the state courts.

Notably, a federal court may not grant a timely habeas petition that a person convicted in Superior Court has filed "unless it appears that . . . the applicant has exhausted the remedies available" in the local courts.  28 U.S.C. § 2254(b)(1)(A).  This exhaustion requirement is based on comity and is not jurisdictional.  *See, e.g.*, *Strickland v. Washington*, 466 U.S. 668, 684 (1984); *Rose v. Lundy*, 455 U.S. 509, 522 (1982).  Thus, if a petitioner fails to exhaust a particular claim, that deficiency can be excused if he can "demonstrate cause for his state-court default of any federal claim, and prejudice therefrom[.]"  *Edwards v. Carpenter*, 529 U.S. 446, 451, (2000). Furthermore, if a petition consisting entirely of unexhausted claims "does not raise even a colorable federal claim[,]" the district court may reach the merits of the claim to deny the petition if the interests of justice would be served by proceeding in that manner, notwithstanding the threshold lack of exhaustion and/or the lack of any cause or prejudice with respect to the default.  *Granberry v. Greer*, 481 U.S. 129, 135 (1987) (explaining that "the interests of the petitioner, the warden, the state attorney general, the state courts, and the federal courts will all be well served" if the federal court denies a habeas petition that contains unexhausted but meritless claims); *see also* 28 U.S.C. § 2254(b)(2) (providing that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

Finally, it is noteworthy that, even when a habeas claim has been exhausted or excused, very few habeas petitions are granted on the merits.  This is because a federal

court is statutorily barred from granting habeas relief except where the state court's "adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *see also Knowles v. Mirzayance*, 556 U.S. 111, 121 (2009).  This is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt[,]" and is therefore "difficult to meet[.]" *Cullen v. Pinholster*, 563 U.S. 170, 171 (2011) (citations and internal quotation marks omitted).

## III.   ANALYSIS

Before this Court can consider the substance of Evans's habeas petition, it must first assure itself that Evans's habeas petition was filed in accordance with section 2254's threshold requirements (*i.e.*, subject matter jurisdiction, timeliness, and exhaustion).  As explained below, this Court has jurisdiction to consider Evans's petition because he is claiming IAAC, and the one-year statute of limitations was tolled during the pendency of the various state appeals and collateral proceedings that Evans initiated, so his habeas petition is also timely.  This Court also concludes that Evans failed to exhaust his IAAC claim before the D.C. Court of Appeals, but rather than dismissing Evans's habeas petition for lack of exhaustion, the Court will deny his petition on the merits, because Evans's IAAC claim is meritless.

### A.   This Court Has Jurisdiction Over Evans's Petition, And It Was Timely Filed

There is no dispute that this Court has jurisdiction over Evans's habeas petition, because his petition is predicated on a claim of ineffective assistance of appellate counsel and, therefore, habeas relief is not available to him under D.C. Code § 23-110(a). *See Williams*, 586 F.3d at 998 (explaining that a D.C. prisoner cannot bring an IAAC claim in a section 23-110 motion). The United States nevertheless vigorously contends that Evans's petition must be dismissed as untimely (*see* Opp'n at 15–16), but as explained below, the undisputed timeline of the relevant events leading up to Evans's filing establishes otherwise.

To begin with, it is clear that Evans filed a timely appeal of the jury verdict that was reached on January 28, 2010 and that the D.C. Court of Appeals affirmed his convictions on March 20, 2014. *Evans*, 91 A.3d 1047. Evans then had 90 days (or until June 18, 2014) to file a petition for writ of certiorari. *See* S. Ct. R. 13(1). Evans satisfied this deadline, filing a certiorari petition on June 16, 2014, and the Supreme Court denied his petition on October 6, 2014. *Evans v. United States*, 135 S. Ct. 145 (2014), No. 13-10610. Thus, Evans's conviction became final for the purpose of AEDPA's one-year limitations period on October 6, 2014. *See Clay*, 537 U.S. at 527.

Prior to that deadline, on September 18, 2014, Evans separately filed a motion with the D.C. Court of Appeals to recall its mandate, arguing that he had received ineffective assistance of counsel at both the trial and appellate levels. (*See* Opp'n. at 3.) Thus, AEDPA's limitations period was independently tolled from the time Evans filed his recall motion until the D.C. Court of Appeals issued its order denying that motion on June 17, 2015. (*See id.* at 4.) *See also* 28 U.S.C. § 2244(d)(2) (providing

that AEPDA's limitations period is tolled while applications for post-conviction relief or collateral review are pending).  The limitations period then ran from June 18, 2015, until Evans filed a § 23-110 motion in the Superior Court, which occurred on October 15, 2015:  a total of approximately 120 days.  (*See* Opp'n at 4.)  *See also Evans*, No. 2008 CF3 5414, Entry No. 195.  The Superior Court denied the section 23-110 motion on June 10, 2016, after which Evans timely appealed the denial, and that appeal was still pending when Evans filed the instant habeas petition on August 12, 2016.  The AEPDA limitations period remained tolled from June 10, 2016, until the mid-August filing of the instant habeas petition (*see* Opp'n at 4); *see also Evans*, No. 2008 CF3 5414, Entry Nos. 199–200, and just shy of four months had run on a 12-month limitations clock when the instant habeas petition was filed.

Citing to the D.C. Circuit's decision in *Blount v. United States*, 860 F.3d 732, 738 (D.C. Cir. 2017), the United States argues that Evans's 2014 motion to recall the mandate did *not* toll the statute of limitations, because the D.C. Court of Appeals never recalled the mandate; thus, in the United States' view, the limitations clock ran untolled from the Supreme Court's denial of certiorari on October 6, 2014 onward.  (*See* Opp'n at 15–16.)  However, in so arguing, it appears that the United States has misread the D.C. Circuit's holding in *Blount*.  In that case, Blount's one-year AEDPA limitations period *had already expired* prior to his filing of the motion to recall the mandate, which itself was also untimely, *see Blount*, 860 F.3d at 737, 741, and Blount argued the D.C. Court of Appeals has "reopened direct review" of the conviction when it accepted and considered his untimely recall motion, which, in Blount's view, had started the AEDPA limitations clock anew, *see id.* at 737 (citing *Jimenez v. Quarterman*, 555 U.S. 113, 120

(2009)).  The D.C. Circuit rejected this argument, holding that the D.C. Court of Appeals had not actually reopened the appeal, given that it had denied the motion to recall the mandate.  *See id.*

These circumstances are entirely inapposite to the facts presented here.  Evans is not hoping to revive an otherwise untimely petition by claiming that the appeals court's consideration of his recall motion restarted the direct review period.  Rather, Evans filed his motion to recall the mandate *before* the Supreme Court had even ruled on his petition for certiorari, and, at that point, not a single day had run on his one-year AEDPA clock.  (*See* Opp'n at 3, 15; Recall Mot.)  *See Evans*, 135 S. Ct. 145.  Therefore, Evans's 2014 motion to recall the mandate did, in fact, serve to toll the statute of limitations even after the Supreme Court denied his petition for certiorari.  *See* 28 U.S.C. §§ 2244(d)(1), (d)(2).  And for this same reason, Evans's filing of the section 23-110 motion in Superior Court also tolled the statute of limitations, as that motion, too, was filed before the AEDPA limitations period expired.  To hold otherwise would be to contravene "AEDPA's clear purpose[,]" which is "to encourage litigants *first* to exhaust all state remedies and *then* to file their federal habeas petitions as soon as possible."  *Duncan v. Walker,* 533 U.S. 167, 181 (2001) (citing §§ 2244(d)(1), (d)(2), 2254(b), (e)(2), 2264(a) (emphases in original)).

Consequently, this Court rejects the United States's limitations argument, and finds that Evans pursued his rights diligently by abiding by AEDPA's statute of limitations requirement when filing his habeas petition.  *See Holland v. Florida*, 560 U.S. 631, 645 (2010).

**B.    This Court Will Consider, And Deny, Evans's Habeas Petition Despite His Lack Of Exhaustion**

1.    Evans's IAAC Claim Was Not Exhausted Because Erroneous Material Information Was Presented To The D.C. Court Of Appeals

In its opposition to the Evans's habeas petition, the United States broadly contends that Evans's habeas petition should be denied, because the D.C. Court of Appeals "already denied [Evans's] motion to recall the mandate in which this [ineffective assistance] issue was raised." (Opp'n at 16.)  However, the parties also acknowledge that Evans made an error when he presented his IAAC claim to the D.C. Court of Appeals in the context of the recall motion (which he was required to file in order to exhaust his state remedies).  Indeed, it is undisputed that Evans specifically argued in the motion to recall the mandate that the exchange in which the trial judge refused to grant an extension of the trial date in order for Evans to retain Key took place *at the plea hearing held on January 22, 2010*, when the counsel-retention issue was, in fact, discussed at hearings held in September and October of 2009.  (*Compare* Opp'n at 9–10; 2d Reply at 5–6 *with* Recall Mot. at 7.)  It was most likely due to this factual error that the D.C. Court of Appeals found that Evans's "contention that the trial court failed to afford him counsel of choice [was] unsupported by the record of the plea hearing that occurred on January 22, 2010." (Recall Decision at 2–3.)  And Evans acknowledges that the date error amounted to a default of this claim.  (*See* Pet. Supp. at 3–5; Reply at 3–5; 2d Reply at 5–8.)  Nevertheless, he asks this Court to excuse his default under the "cause and prejudice" standard and grant his petition on the merits. (*See* Pet. Supp. at 3–5; Reply at 3–5; 2d Reply at 5–8.)

This Court agrees with Evans that he did not fairly present his ineffective assistance of appellate counsel claim in his motion to recall the mandate because he pointed to the wrong hearing date, and the D.C. Court of Appeals could not have discovered the true nature of his claim from the materials Evans submitted and arguments Evans made in the context of the recall motion.  *See Baldwin v. Reese*, 541 U.S. 27, 31 (2004) (finding that a petitioner did not fairly present his federal habeas claim to a state appellate court when the appellate judges would have discovered the claim only by reading the lower court's opinions).  Ordinarily, the Court would proceed to determine whether this default was excused under traditional legal standards that require courts to evaluate whether a petitioner can show cause for his state-court default, and that he has also suffered prejudice as a result.  *See Edwards*, 529 U.S. at 451.  However, under the circumstances presented here, the Court can, and will, proceed to consider Evans's habeas petition on the merits regardless, and it will deny Evans's petition, for the reasons explained below.  *See Granberry*, 481 U.S. at 135 (authorizing district courts to rule on unexhausted habeas claims that are patently meritless).

### 2.   Evans's IAAC Claim Is Meritless

In order to prove ineffective assistance of appellate counsel, Evans must satisfy the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668 (1984).[7] First of all, he must show that counsel's performance was so deficient that it "[fell] below an objective standard of reasonableness [under] prevailing professional norms."

---

[7]  "The analysis by which courts determine whether appellate counsel provided ineffective assistance is the same as that for trial counsel."  *United States v. Agramonte*, 366 F. Supp. 2d 83, 86 (D.D.C. 2005) (citing *Smith v. Robbins*, 528 U.S. 259, 289 (2000)).

*United States v. Gwyn*, 481 F.3d 849, 853 (D.C. Cir. 2007) (restating the *Strickland*

test).  And the second prong requires a defendant to show that this deficiency

prejudiced the appeal such that "there is a reasonable probability that, but for counsel's

errors, the result of the proceeding would have been different."  *Gwyn*, 481 F.3d at 853.

Success on the first prong of the *Strickland* test requires showing that counsel "made

errors so serious that counsel was not functioning as the 'counsel' guaranteed the

defendant by the Sixth Amendment."  *United States v. Moore*, 394 F.3d 925, 931 (D.C.

Cir. 2005) (quoting *Strickland*, 466 U.S. at 687).  "'Judicial scrutiny of counsel's

performance must be highly deferential,' and 'a court must indulge a strong

presumption that counsel's conduct falls within the wide range of reasonable

professional assistance.'"  *Knowles*, 556 U.S. at 124 (quoting *Strickland*, 466 U.S. at

689).  Moreover, "[i]t is up to the defendant to overcome this presumption and show

that the challenged action was not the result of sound strategy."  *Agramonte*, 366 F.

Supp. 2d at 86 (citing *Strickland*, 466 U.S. at 689–90).  With respect to the second

prong, "[a]n error by counsel, even if professionally unreasonable, does not warrant

setting aside the judgment of a criminal proceeding if the error had no effect on the

judgment."  *Strickland*, 466 U.S. at 691.  A court need not address both components of

the *Strickland* inquiry if a petitioner makes an insufficient showing on one of them.  *See*

*Strickland*, 466 U.S. at 697; *see also Smith*, 528 U.S. at 285.  And, here, this Court

finds that Evans has failed to satisfy the first prong of the *Strickland* test, because

appellate counsel's performance was objectively reasonable, and the presumption that

Wicks's decision not to raise the choice-of-counsel issue reflected her understanding of

the applicable law and was thus part of sound appellate strategy has not been rebutted. *See Strickland*, 466 U.S. at 689.

To start, while it is clear that a criminal defendant generally has a constitutionally protected right to choose his own counsel, as contemplated by the Fifth and Sixth Amendments, *see Wheat v. United States*, 486 U.S. 153, 158 (1988); *Yancey v. United States*, 755 A.2d 421, 425 (D.C. 2000), the right to proceed to trial with counsel of one's own choosing is not absolute, *see United States v. Gonzalez-Lopez*, 548 U.S. 140, 152 (2006). Indeed, "[t]he essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers[.]" *Pinkney v. United States*, 851 A.2d 479, 486–87 (D.C. 2004) (internal citations and quotation marks omitted). Moreover, the right of a defendant to choose his counsel can be limited when a trial court exercises its inherent power to enforce orderly procedures and administer justice; that is, courts have "wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar." *Gonzalez-Lopez*, 548 U.S. at 152; *Freeman v. United States*, 971 A.2d 188, 194 (D.C. 2009) (citation omitted); *Yancey*, 755 A.2d at 425. Stated in an even simpler fashion, a criminal defendant has the right to have counsel represent him, but he does not have an unfettered "constitutional right to choose his attorney." *United States v. Bostick*, 791 F.3d 127, 156 (D.C. Cir. 2015).

What is more, the facts here do not clearly establish that Evans's Sixth Amendment rights were violated when the trial court refused to delay the proceedings further to allow him to retain counsel of his choice. As previously explained, Ohm was

appointed to represent Evans immediately after his arrest in 2008, and proceeded to represent Evans for a just over a year and a half.  (*See* Opp'n at 8.)  *See also Evans*, No. 2008 CF3 5414, Entry No. 16, 108–10.  And by September 18, 2009, when Ohm sought to withdraw from representing Evans in the robbery matter and informed the trial court for the first time that Evans's family had contacted Key about retaining Key to represent Evans, Evans's criminal case had already been scheduled for trial four times (*see* Opp'n at 9; Resp.'s Ex. 7).  *See also Evans*, No. 2008 CF3 5414, Entry Nos. 88, 105, 115.  The record also established that Evans had been acquainted with Keys for at least four months in the context of the homicide matter, which was certainly ample time for him to pursue retaining Key in the robbery matter.  *See Evans*, No. 2008 CF1 008163, Entry No. 44.  Furthermore, the Superior Court judge plainly considered Evans's right to choose his counsel, as she appointed Irving to represent Evans during the September hearing after Ohm's withdrawal as a potential intermediate step, *see Evans*, No. 2008 CF3 5414, Entry Nos. 108–10, and she also gave Evans nearly six more weeks—until the next status hearing, scheduled for October 30, 2009—to retain Key (*see* Opp'n at 9).  The trial court then made it very clear to Evans that if Key was not retained by October 30, Irving would represent Evans at the scheduled trial (*id*.), and by the time of the status hearing in which the judge cut off the retention effort, the robbery matter had already been pending for nearly 20 months.  *See Evans*, No. 2008 CF3 5414, Entry No. 1.

Taking into account this entire timeline, there was nothing erroneous or unreasonable about the Superior Court's assertion that the time for retaining Key to represent Evans had passed and that the trial would proceed with Irving as defense

counsel.  (*See* Opp'n at 9–10.)  To the contrary, the record makes it readily apparent that the trial court patiently provided Evans with a reasonable opportunity to secure counsel of his choice, while also balancing the court's interest in seeing to it that the matter moved expeditiously to trial.  *See Morris v. Slappy*, 461 U.S. 1, 11 (1983) (noting that "[t]rial judges necessarily require a great deal of latitude in scheduling trials"); *see also Yancey*, 755 A.2d at 425.[8]

Finally, even if the trial court's discretion in refusing to allow for Evans's choice of counsel had not been reasonably exercised, it is clear beyond cavil that appellate counsel "need not (and should not) raise every nonfrivolous claim."  *Smith*, 528 U.S. at 288 (citation omitted).  Instead, appellate lawyers "may select from among [such claims] in order to maximize the likelihood of success on appeal."  *Id.*; *see also Jones v. Barnes*, 463 U.S. 745, 751–52 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."); *United States v. Clark*, 382 F. Supp. 3d 1, 30 (D.D.C 2019) (holding that "the possibility that the claim could be raised does not mean that counsel's decision not to

---

[8]  The letters and affidavits from Key on which Evans relies are not to the contrary.  (*See* Add. Ev. at 1–2; 1st Repl. Suppl. at 7–8.)  In those exhibits, Key does not dispute the timeline, but states that, at the time of the October 30th hearing, "Joseph Evans and his family wanted to hire me to represent him in case number 2008 CF3 5414[.]  I was willing to represent Mr. Evans, but I needed *additional time to be hired* and prepare for trial."  (Aff. of Thomas A. Key ("Key Aff."), Ex. A. to Add. Ev., ECF No. 2-1, ¶ 4) (emphasis added).)  Key does not provide any definite date upon which he expected to be retained.  (*See id.*; 1st Repl. Suppl.)  And the fact that more time seemed to be available, as evidenced by the trial court eventually granting Irving a brief trial continuance to review discovery, is immaterial to the question of whether Evans should have been given additional time to retain Key.  (*See* Pet. at 23; Key Aff. ¶ 7; Reply at 3; 1st Reply Supp. at 8; Pet'r's Amendment, ECF No. 46, at 1; 2d Reply at 9–10.)  At the point in which the court cut off the effort to retain Key, there was no certainty that Evans's family was *ever* going to retain Key successfully, nor could the trial court be assured that, if Key was successfully retained at some point in the future, he would be available and able to prepare for and to try the multi-count case in the timeframe that the court had established (and had already delayed multiple times).

press the claim is an objectively unreasonable choice").  Thus, Evans's efforts to persuade this Court that Wicks acted unreasonably when she failed to raise a "dead-bang winner" of an issue (2d Reply at 8) are unavailing.[9]  Moreover, given the manifest weakness of Evans's choice-of-counsel argument, this Court finds it objectively reasonable that Wicks declined, as a matter of strategy, to advance this particular argument on appeal.  Thus, Evans cannot even satisfy the first prong of the *Strickland* test, which means that he is not entitled to a writ of habeas corpus based on infective assistance of appellate counsel, and this Court will deny his petition on this basis.

## IV.    CONCLUSION

For the foregoing reasons, this Court finds that Evans's habeas petition is timely, but fails on the merits.  Thus, as reflected in the prior Order, Evans's petition for a writ of habeas corpus has been **DENIED** and this Civil Action has been **DISMISSED**.

DATE:  June 15, 2020                    *Ketanji Brown Jackson*
                                        KETANJI BROWN JACKSON
                                        United States District Judge

---

[9]  In this regard, Evans's reliance on *United States v. Cook*, 45 F.3d 388 (10th Cir. 1995), is misplaced, because that case has been abrogated, *see Neil v. Gibson*, 278 F.3d 1044 (10th Cir. 2001), and that non-binding authority has no bearing on Evans's "choice of counsel" argument.  *See id.*  Nor is there any evidence in the record that supports what Evans asserts is either a conflict of interest on Irving's part (*see* Pet. at 20–2, 26–7; 1st Suppl. Reply at 3–4; 2d Reply at 8), or collusion between Irving, the trial court, and government counsel to have him convicted (*see* Pet. at 23–6).